## Wagner et ux. v. Hamilton et ux.

October 18, 1946.

L. J. May for appellants.

F. M. Burke for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellees, Roy Hamilton and wife, Minnie Hamilton, were plaintiffs below, and the appellants, Bruce Wagner, and wife, Roma Wagner, were defendants below. They will be so referred to in this opinion.

On May 18, 1931, defendant, Roma Wagner, owned a tract of land in Pike County, Kentucky, and on that day she and her husband, Bruce Wagner, executed to Paramount Natural Gas Corporation an oil and gas lease whereby lessee was given the right to take from the land the minerals named, and for surface privileges incident thereto, for a period of ten years and so long thereafter as such minerals were found in paying quantities, the lessors to receive ⅛ of the minerals produced as royalty. The lease contained these provisions:

(A) "Lessor may lay a line to any gas well on said land and take gas produced from said well for his own use for heat and light in one dwelling house on said land at Lessor's risk, * * *."

(B) "All terms, conditions, limitations and covenants between the parties hereto shall extend to their respective heirs, successors, personal representatives and assigns. The covenants herein on behalf of the Lessor are the joint and several covenants of each of the parties of the first part."

Therefore, if the first excerpt supra (A) should be construed so as to create only a personal one for the

benefit of the lessors alone, the last excerpt dissipated any such construction or interpretation, by expressly declaring that the privilege of free gas "shall extend to their (parties hereto) respective heirs, successors, personal representatives and assigns," which converted the free gas privilege for domestic purposes into a covenant running with the land. (Our parenthesis.)

By successive conveyances and assignments of the lease privileges obtained by the lessee, the United Carbon Company became the owner thereof. Since it acquired the right under the lease to produce oil and gas, it has drilled a producing gas well from which free gas to the owners and occupants of the surface of the leased tract of land for domestic purposes has been so used.

On December 7, 1943, defendants conveyed the land upon which the lease was given to Grace Y. Williams, who has since married Steve Meade. That deed contained this reservation: "One gas well and oil and gas rights are excepted from the above described tract of land," the deed being an absolute one in other respects. On August 9, 1945, Grace W. Meade and her then husband, Steve Meade, conveyed all of the rights owned by them in and to the leased tract jointly to plaintiff, Roy Hamilton and his wife, Minnie Hamilton.

Each occupying owner of the tract, as we have said, used free gas from the gas well drilled thereon by the United Carbon Company as long as they were the owners of the surface. Prior to the filing of this action by plaintiffs against defendants on November 9, 1945, defendants began for the first time to deny the right of plaintiffs to the free use of gas for their domestic purposes upon the ground that (as pleaded in their answer):

"If the free gas covenant in the lease from the defendants to the said Paramount Natural Gas Company and from defendants in deed to Grace Y. Williams or from Grace Y. Williams Meade to the plaintiffs, can be considered as running with or attached to the surface of the land, it was and is for the benefit of these defendants, and these defendants had a right to except said gas free or otherwise, from each and all of said writings, and thereby separate such right as to free gas or other gas, from the surface of said land; that they are entitled to the royalties from said gas under said lease and to

122

have a legal right to prevent said gas from being dissipated or used free by plaintiffs or other person. They say that the right to free gas in the lease to Paramount Natural Gas Company was to them only, not their successors or assigns, and therefore is a right personal to them and not a covenant running with the surface of the land.''

They, therefore, contended that the free gas privilege in the lease was only a personal one extending only to defendants with the consequence that it (free gas privilege) became nullified upon their ceasing to own and occupy the surface of the leased premises and thereafter they became entitled under the terms of the lease to their ⅛ royalty from the gas used by subsequent owners and occupants. That contention, as we have seen, is expressly refuted by express language contained in provision (B) supra of the lease, which extended to, and was for the benefit of, not only the lessors but also their heirs and assigns.

It is alleged in the petition that defendants on October 18, 1945, pursuant to their contention supra, served on plaintiffs written notice that unless they installed a meter measuring the amount of the gas they used for domestic purposes and pay defendants for their proportion of the amount so used, on the royalty basis, that defendants would, after 30 days from that date, ''disconnect the gas line running from said well to your home.'' This action followed on the day above stated whereby plaintiffs sought an injunction against defendants from carrying out their threat to disconnect the pipeline conveying free gas to their premises from the well that had been drilled, and, in effect, to quiet their right to the free use of the gas in contest. The court sustained the prayer of their petition and perpetually enjoined defendants from ''disconnecting or otherwise interfering with or molesting in any way the gas line leading from the gas well located thereon to the dwelling house of plaintiffs, or molesting or in any way interfering with the gas fixtures which heat and light said dwelling house and from in any way interfering with, or molesting the plaintiffs or either of them in the peaceable use and quiet enjoyment of the possession of their land and the use of free gas from the gas well located thereon.'' From that judgment defendants prosecute this appeal.

In the case of Warfield Natural Gas Co. v. Small, 282 Ky. 347, 138 S. W. 2d 488, 489, substantially, if not precisely, the same questions were presented to this court, and in disposing of them adversely to defendant's contention, we said:

"Appellant contends furthe₁ that the above quoted reservation in the deed conveying the surface of the land to appellee's prior vendor destroyed any right of the surface owner thereafter to use free gas. It is true that this deed to the surface of the land through which appellee claims did reserve all rights covered by the original lease but it does not appear to us that the intention of the parties to that deed was to destroy the free gas right attached to the surface. It is our opinion that the intention of that deed was only to reserve all rights under the lease which the grantors in that deed could use or which could be of some benefit to them. The free gas privilege could be of no benefit or use to the holder of the detached oil, gas and mineral right who did not live on the premises. We conclude therefore that this deed did not operate to destroy the free gas right attached to the surface of the land.

"Appellant also contends that the free gas covenant contained in the original lease was abrogated by the new lease executed to it by Bee Patton Ross in September, 1928, containing no free gas clause. The conclusions heretofore enunciated are an answer to this contention, since the covenant for free gas attached to the surface of the land and not to the oil, gas and mineral right. Mrs. Ross, by this new lease, could not destroy the right vested in the owner of the surface of the land to use free gas."

Mrs. Ross in that case was an intermediate owner of the separate mineral estate and to settle some dispute she executed a new lease without any reservation, but her estate was then encumbered by the involved covenant which her new lease did not destroy, but remained as an appurtenant right of the surface owner.

We, therefore, deem it unnecessary to enter into a discussion of the question of when a covenant in a conveyance runs with the land conveyed, and when it is only a personal covenant for the benefit of the particular covenantee, which in some instances presents a question

of considerable difficulty. However, we have found no case, nor any text, containing a different interpretation, under similar facts, from that made by us in the Warfield Natural Gas Company case, with which we are still in accord, and from which it follows that the court committed no error in the judgment appealed from.

Wherefore, it is affirmed.