234 S.W.2d 950 (1950)
COLEMAN et al.
v.
LINDSEY et al.
Court of Appeals of Kentucky.
December 12, 1950.
*951 V. R. Bentley, Pikeville, for appellants.
P. K. Damron, O. A. Stump, Pikeville, for appellees.
KNIGHT, Justice.
On April 29, 1944, A. G. Woodall and Myrtle, his wife, conveyed to appellants, Willie Coleman and Jennie, his wife, a tract of land in Pike County containing 44 acres, there being excepted from the conveyance all mineral rights and privileges. Subsequently, on January 22, 1948, A. G. Woodall and Myrtle, his wife, Lloyd Damron and Mattie, his wife, all appellees herein, executed a written lease to W. W. Lindsey and J. C. Kindred, also appellees herein, by which the lessors leased to the lessees all the oil, gas and "gasoline" in and under 154 acres of land. This included 110 acres belonging to Damron and wife and 44 acres which Woodall and wife had previously conveyed to appellants, Willie and Jennie Coleman, and from which they had reserved the mineral rights as above set out. Subsequently Damron and wife conveyed parts of their 110 acre tract to others and they are parties to this litigation as appellees. The only part of the lease which is material to this case is a provision that "lessor shall be entitled to 200,000 cubic feet of gas per year free of cost, for domestic use in one dwelling on said premises from any gas well thereon so long as lessee shall operate same and the pressure is sufficient for its use." It also provided that 71.428% of the royalties accruing hereunder be allotted to Lloyd Damron and 28.572% be allotted to A. G. Woodall.
This suit was filed by appellants, owners of the Woodall tract, but not of the minerals thereunder, claiming that they were entitled to all the free gas provided for in the lease for use in their home located on the premises which they purchased from the Woodalls. They pray that the lessees, Kindred and Lindsey, be enjoined from refusing to allow them to tap the gas well which is located on their premises and to permit them to draw therefrom the full amount of the free gas provided for in the lease.
The lessees by answer say that they have nothing to do with the proportional distribution of the free gas but are willing that it be distributed as the court may determine. Lloyd Damron and wife filed an intervening petition in which they set up their claim of and right to 71.428% of the free gas provided for in the lease. Later other parties who had acquired part of the Damron tract filed intervening petitions claiming a portion of this 71.428%. The *952 case was submitted on the pleadings, exhibits, the small amount of proof taken and on a stipulation that "the surface contained in the 154 acre lease is owned by the following persons: Otis Compton and Jessie D. Compton his wife, 76 acres, Hatler Bryant and Mary Bryant his wife, 34 acres, and Willie Coleman and Jennie Coleman his wife, 44 acres; that there are two wells located on the lease, one on the Willie Coleman tract and one on the Otis Compton tract; that the well on the Compton tract is 600 feet from his residence and the well on the Coleman tract is 800 feet from his residence."
On July 11, 1949, a judgment was entered adjudging that appellants, Willie and Jennie Coleman, are entitled to 28.572% of the annual 200,000 cubic feet of free gas to be taken from the well on their premises; that Otis and Jessie Compton and Hatler and Mary Bryant, grantees of Lloyd and Mattie Damron, two of the original lessors, are entitled to 71.428% of the free gas to be taken from the well on the Damron tract, to be divided among them according to their pro rata share of the acreage.
Appellants, Coleman and wife, appeal from that judgment contending that they are entitled to all of the 200,000 cubic feet of free gas which the lease provides for. We are utterly unable to see any justification for appellants' contention.
It appears to be well settled in this jurisdiction that while free gas, usually provided for in oil and gas leases, is in some respects personal to the owner of a dwelling located on the leased land in that it is for his use while he lives in the dwelling, yet it ceases to be personal when he sells or transfers the land, in which event the free gas privilege runs with the land and goes with the dwelling located thereon at the time of the original lease. Blair v. Sturgill, 311 Ky. 622, 224 S.W.2d 928; Warfield Natural Gas Co. v. Small, 282 Ky. 347, 138 S.W.2d 488; Wagner v. Hamilton, 303 Ky. 120, 196 S.W.2d 973. In the above cases and in most cases where the question has arisen, there was involved only one tract of land or, at any rate, only one lessor. In the instant case, there were two tracts of land and two lessors, and the two tracts, though separately owned, were joined together in the original lease, according to the pleadings, "to meet government regulations which require a certain minimum acreage for the drilling of gas wells." The case is further complicated by the fact that, though there was one house on each of the two tracts, the lease provided only that the "lessor shall be entitled to 200,000 cubic feet of gas per year free of cost for domestic use in one dwelling on said premises." (Our emphasis.) It is this situation which has given rise to this dispute between the present owners of the surface, now consisting of three separate tracts, as set out in the stipulation heretofore quoted.
In his effort to arrive at an equitable solution of this question, the Chancellor in his judgment made a proportional distribution of the free gas on the basis of the acreage of the two tracts going to make up the lease. It is unnecessary for us to decide whether or not this pro rata apportionment among the original lessors is a correct and proper one where two lessors own two tracts on each of which there is one dwelling and the lease provides for free gas for one dwelling only. However, under the facts of this case, we think there was only one dwelling that could receive the free gas and that was the dwelling located on the 110 acre tract owned by the lessor, Damron. There was no "dwelling" on that part of the lease which the Woodalls contributed to the original lease because their part of the lease was only for the gas and oil under the 44 acre tract which, with the dwelling thereon, they had four years previously sold to the Colemans, appellants herein, reserving only the mineral rights. It follows that when the Woodalls leased the gas and oil to Lindsey and Kindred in 1948, they had no dwelling in which they could use the free gas provided for in the lease and that the one dwelling referred to in the lease was the dwelling on the Damron tract. Had the lease by the Woodalls preceded the sale of the surface to the Colemans, then the covenant for the free gas would have run with the land and we would then have for decision *953 the question of which of the two dwellings on the two tracts was entitled to the free gas.
It is obvious that under no circumstances would appellants, the Colemans, be entitled to all the free gas, as they contend, and we think under the facts of this case that they were not entitled to any since the Woodalls had no free gas to pass on to them when, in 1944, they acquired title to the property. However, since the lessees are making no objection to the distribution of the free gas and since the other appellees are raising no objection to the allocation by the Chancellor of 28.572% of the free gas to appellants and none of the appellees have prosecuted a cross-appeal against the judgment of the lower court, it must be and it is hereby affirmed.